NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUZVIMID NEPOMUCENO on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC. & JOHN DOES 1 to 10,<br><br>                Defendants. | Civil Action No. 14-05719-SDW-SCM<br><br><br>**OPINION**<br><br><br><br>June 13, 2016 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Luzvimid Nepomuceno's ("Plaintiff") Motion for Class Certification pursuant to Federal Rule of Civil Procedure ("Rule") 23. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78. For the reasons stated below, Plaintiff's Motion is **GRANTED**.

**I.     JURISDICTION AND VENUE**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Venue is proper pursuant to 28 U.S.C. § 1391(b).

**II.    BACKGROUND**

Plaintiff Luzivid Nepomuceno filed the operative Amended Complaint, (Dkt. No. 21), in this matter on August 31, 2015. According to the Amended Complaint, Defendant Midland Credit

1

Management, Inc. ("Defendant") mailed Plaintiff a letter dated September 14, 2013, which attempted to collect a credit card debt Plaintiff allegedly owed to non-party Midland Funding, LLC ("Midland Funding"). (Am. Compl. ¶ 7.) Midland Funding previously purchased the debt from non-party, Asset Acceptance, LLC. (Patel Decl. Ex. B at 6.) Although it is unclear how Asset Acceptance, LLC came to own the debt, the original creditor was Citibank, N.A. ("Citibank"). (Am. Compl. ¶ 17.) Citibank charged off[1] the debt on approximately April 12, 2012. (*Id.* ¶ 18.)

The September 14, 2013 collection letter (the "Statement") Defendant sent Plaintiff contains the following information on its first page:

| STATEMENT | | | |
|---|---|---|---|
| MCM Account #: REDACTED | | | Previous Balance: $7,688.53 |
| Original Account #: (REDACTED 17 | | | Interest Rate: 6% |
| Statement Date: 09-14-2013 | | Due Date: 10-29-2013 | Accrued Interest: $231.27 |
| Current Owner: Midland Funding LLC | | Original Creditor: Citibank, N.A. | Current Balance: $7,919.80 |
| Due Date | Date Received | Transactions | Amount |
| 10-29-2013 | 09-14-2013 | The above-referenced account was purchased by Midland Funding LLC and is serviced by Midland Credit Management, Inc. ("MCM"). The balance of $7,919.80 is due now.<br><br>Please direct all correspondence to:<br>Midland Credit Management, Inc.<br>8875 Aero Drive, Suite 200<br>San Diego, CA 92123 | $7,919.80 |
| | | | Current Balance: $7,919.80 |

---

[1] Charging off a debt is defined as "treat[ing] (an account receivable) as a loss or expense because payment is unlikely . . . ." CHARGE OFF, Black's Law Dictionary (10th ed. 2014).

2

(Patel Decl. Ex. C at 1.)  Plaintiff now claims that two portions of this Statement violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

First, Plaintiff claims that Defendant included a due date on the Statement without any factual or legal basis for asserting that a payment was due on the stated date.  (Am. Compl. ¶ 14.)  According to Plaintiff, Defendant's inclusion of a due date in the Statement violated 15 U.S.C. § 1692e(2)(A) by falsely representing "the character, amount, or legal status" of Plaintiff's debt.  (Pl.'s Br. Supp. Mot. Class Cert. ("Pl.'s Br. Supp.") 6.)  Plaintiff also claims that Defendant's inclusion of the due date violated 15 U.S.C. § 1692e(10) by using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  (*Id.*)

Second, Plaintiff alleges that Defendant also violated the FDCPA by including an interest charge of $231.27 in the Statement.  (*Id.* 6-7.)  Defendant admits that the interest charge began accruing on April 12, 2012, after Citibank charged off Plaintiff's debt.  (Patel Decl. Ex. B at 10.)  According to Plaintiff, charging interest at the rate of 6% "was not authorized under the original credit card agreement [between Plaintiff and Citibank]."  (Am. Compl. ¶ 22.)  In addition, Plaintiff claims the 6% interest rate was in excess of the rate authorized by New Jersey law.  (*Id.* ¶ 23.)  Finally, Plaintiff claims that Midland Funding did not have the appropriate license to act as a consumer lender until January 6, 2015, and that, as a result, Defendant "was not entitled to demand or collect interest accrued after an account was charged off by the original creditor for any consumer loan."  (*Id.* ¶ 27.)  In other words, Plaintiff claims Defendant was not authorized to collect interest on charged off consumer loans before January 6, 2015.  Accordingly, Plaintiff claims Defendant's attempt to charge the "Accrued Interest" in the Statement violated 15 U.S.C. §§ 1692e(2)(A), e(2)(B), and f(1).  (Pl.'s Br. Supp. 6-7.)

Having conducted discovery, and after reviewing Defendant's files as to Plaintiff, Plaintiff now seeks certification of a class pursuant to Rule 23. (*Id*. at 2-3.) According to Defendant's interrogatory responses, Defendant composes collection letters ("Statements") like those Defendant sent to Plaintiff by "load[ing] consumer information into a template which contains the fields that are programmed into the particular letter." (Patel Decl. Ex. B at 9.) Furthermore, Defendant admits to having sent 30,156 Statements to New Jersey addresses between September 12, 2013, and January 6, 2015, each of which contained a due date and/or interest charge and attempted to collect a debt on behalf of Midland Funding. (*Id*. at 6-7.) Accordingly, Plaintiff claims that by sending these Statements containing due dates and/or accrued interest charges, Defendant violated the same provisions of the FDCPA as to each of the consumers as those provisions Defendant violated as to Plaintiff. (Pl.'s Br. Supp. 6-7.) Therefore, Plaintiff now seeks certification of a Rule 23(b)(3) class which Plaintiff would define as follows:

> All New Jersey residents to whom Defendant sent a "Statement" at any time between September 12, 2013 and January 6, 2015 that contained:
>
> (a) a demand for interest accrued after the account was charged off by the original creditor; and/or
>
> (b) a "Due Date" by which the consumer was to make payment towards the account.

(Pl.'s Br. Supp. 8.)

### III. LEGAL STANDARD

#### A. Class Certification

A "party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)). Specifically, "every putative class

4

action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

Under Rule 23(a), a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). These requirements are, respectively, referred to as the numerosity, commonality, typicality, and adequacy requirements. *See, e.g.*, *Marcus*, 687 F.3d at 591.

Moreover, a party seeking class-certification under Rule 23(b)(3) must satisfy several additional requirements. First, "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163. To do so, the plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). Second, Rule 23(b)(3) also requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These additional requirements are, respectively, referred to as the ascertainability, predominance, and superiority requirements. *See, e.g.*, *Byrd*, 784 F.3d at 162.

## IV.   DISCUSSION

### A.   Ascertainability

Under the ascertainability requirement Plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible

5

mechanism for determining whether putative class members fall within the class definition.'" *Id.* at 164-65 (quoting *Hayes*, 725 F.3d at 355). With regard to the second prong of the ascertainability requirement, "a plaintiff need only show that 'class members *can* be identified." *Id.* at 163 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)).

     As stated above, Plaintiff seeks certification of a class defined as follows:

     All New Jersey residents to whom Defendant sent a "Statement" at any time between September 12, 2013 and January 6, 2015 that contained:

     (a) a demand for interest accrued after the account was charged off by the original creditor; and/or

     (b) a "Due Date" by which the consumer was to make payment towards the account.

(Pl.'s Br. Supp. 8.)

Defendant first argues that Plaintiff has not satisfied the ascertainability requirement because determining the original creditor, the "nature of the debt obligation," and the interest rate charged as to each class member "would require an account-by-account analysis, which renders class certification inappropriate." (Def.'s Br. Opp. Pl.'s Mot. Class. Cert. ("Def.'s Br. Opp.") 8.) Therefore, Defendant claims, "the proposed class is not identifiable." (*Id.*) However, as shown by Defendant's citation to *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, No. CIV.A. 03-4558, 2012 WL 379944, at *10 (D.N.J. Feb. 6, 2012), (Def.'s Br. Opp. 8), Defendant conflates Rule 23's ascertainability and predominance requirements. *See Byrd*, 784 F.3d at 164 ("[T]he ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." (quoting *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 184 (3d Cir. 2014)) (internal quotation marks omitted)). The proposed class definition simply requires

individuals to be New Jersey residents to whom Plaintiff sent a Statement containing a due date and/or an interest charge during a limited time period.  (*See* Pl.'s Br. Supp. 8.)  Plaintiff avers that individual class members can be identified through a review of Defendant's business records, (Pl.'s Br. Supp. 10-11), and, based on Defendant's interrogatory responses, (*See* Patel Decl. Ex. B at 6-9), this appears more likely than not to be true.

Defendant also claims that the proposed class and the term "Statement" are "fatally vague," for essentially the same reason that Defendant claims the class is not identifiable, i.e., the interest rate, the original creditor, and other information can vary between Statements.  (*See* Def.'s Br. Opp. 8-10.)  In this instance, it is not clear whether Defendant is challenging Plaintiff's Motion with regard to the ascertainability requirement or the "other relevant preliminary inquiry . . . that plaintiffs provide a proper class definition, Fed. R. Civ. P. 23(c)(1)(B)." *Byrd*, 784 F.3d at 164.  However, Defendant's argument does not pose a barrier to either requirement.  As discussed above, even if interest rates, for example, vary in individual Statements, Plaintiff has still met its burden to show that individual class members can be identified.  Furthermore, to the extent that Defendant intended this argument to be a challenge to the separate requirement of a proper class definition under Rule 23(c)(1)(B), the term "Statement" is not vague since it simply refers to the form collection letters Defendant used in collecting debts, such as the letter Defendant sent to Plaintiff.

Finally, Defendant argues against class certification based on the fact that Plaintiff's proposed definition includes individuals to whom Defendant *sent* a Statement but does not limit the class to those individuals that actually *received* a statement.  (Def.'s Br. Opp. 10-11.)  As a result, according to Defendant, "class membership would not be ascertainable without this Court first determining whether each proposed member actually received MCM's 'Statements.' . . . ." (*Id*. at 11.)  However, as the Third Circuit explained in *Byrd v. Aaron's Inc.*, this sort of argument

"conflates the issues of ascertainability, overbreadth (or predominance), and Article III standing." 784 F.3d at 168. Plaintiff has provided this Court with a proposed class definition that uses objective criteria and has also provided a method of identifying individuals in the proposed class (review of Defendant's records). Whether the proposed definition includes individuals who did not receive Defendant's letter does not prevent the individuals in the definition from being identified and, therefore, does not affect whether Plaintiff has satisfied the ascertainability requirement. *Id*. at 168-69. Accordingly, this Court finds that Plaintiff has met its burden under the ascertainability requirement.[2]

**B.     Numerosity**

Under Rule 23(a)(1), the numerosity requirement, the party seeking class certification must show that "the class is so numerous that joinder of all members is impracticable." Although, "[t]here is no minimum number of members needed . . . . 'generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Marcus*, 687 F.3d at 595 (quoting *Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir. 2001)).

In this instance, Defendant admits to having sent 30,156 Statements to New Jersey addresses between September 12, 2013, and January 6, 2015, each of which contained a due date and/or interest charge and attempted to collect a debt on behalf of Midland Funding. (Patel Decl. Ex. B at 6-7.) In light of this concession, it appears that the potential number of plaintiffs far

---

[2] Although Defendant did not challenge the standing of proposed class members, this Court notes that "a consumer . . . who did not actually receive a dunning letter directed toward him at the time it was sent, nonetheless may bring an action challenging the lawfulness of that letter under the [FDCPA]." *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014).

exceeds the number generally deemed to satisfy the numerosity requirement. *See Marcus*, 687 F.3d at 595; *Barkouras v. Hecker*, No. CIV. 06-0366 (AET), 2006 WL 3544585, at *1 (D.N.J. Dec. 8, 2006) (finding Rule 23(a)(1) satisfied where a debt collector sent approximately 15,000 communications to New Jersey debtors).

**C.     Typicality**

Under Rule 23(a)(3), the typicality requirement, a party seeking class certification must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The purpose of this requirement is "to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class . . . .'" *Marcus*, 687 F.3d at 598 (quoting 7A Charles Alan Wright *et al., Federal Practice and Procedure* § 1764 (3d ed. 2005)). Therefore, to determine whether a plaintiff has satisfied the typicality requirement the court must "consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598 (citing *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009)). That said, "[i]f a plaintiff's claim arises from the same event, practice or course of conduct that gives rises [sic] to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Marcus*, 687 F.3d at 598 (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992)).

In this instance, Plaintiff alleges that Defendant violated the FDCPA by sending Plaintiff a collection letter which contained a due date without any basis for asserting that a payment was due on the date specified. (Pl.'s Br. Supp. 4-6.) In addition, Plaintiff claims that sending the letter violated the FDCPA because the letter contained an interest charge for the period after the original debt was charged off, which was neither authorized by law nor by Plaintiff's agreement with the

9

original creditor and which Midland Funding did not have the proper license to charge. (*Id*. at 4-7.) These claims, that Defendant violated the FDCPA by sending Plaintiff the Statement containing the due date and interest charge, are the same claims which would be asserted by the putative class members to which Defendant admitted it sent similar Statements on behalf of Midland Funding. Although Defendant claims that factual differences, such as variations in the interest rate charged to putative class members, undermine Plaintiff's claim of typicality, Plaintiff's claim is based on the same course of conduct and legal theories as that of the putative class members. Therefore, Plaintiff has satisfied the typicality requirement.

**D.     Adequacy**

   *a.  Plaintiff* **(Rule 23(a)(4))**

Under Rule 23(a)(4), the adequacy requirement, a party seeking class certification must show that "the representative parties will fairly and adequately protect the interests of the class." In analyzing whether the adequacy requirement is met in a particular matter, the court must consider whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously . . . . and . . . [whether] there is . . . [a] conflict between the individual's claims and those asserted on behalf of the class." *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 291 (3d Cir. 2010), *as amended* (Oct. 20, 2010) (quoting *Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir. 1988)) (internal quotation marks omitted).

In this instance, Plaintiff contends that she will serve as an adequate representative for the class because "her claims for relief are predicated upon the same legal and factual allegations . . . ." as those of the putative class members. (Pl.'s Br. Supp. 18.) In contrast, Defendant argues that Plaintiff is an inadequate class representative because (1) Plaintiff has allegedly refused to be

deposed and (2) because Plaintiff's claim is allegedly subject to an arbitration provision in her credit card agreement with Citibank.  (Def.'s Br. Opp. 16-23.)

In response to Defendant's first argument, that Plaintiff has refused to be deposed, Plaintiff contends that despite repeated attempts to schedule Plaintiff's deposition, the parties ultimately were unable to find a mutually acceptable day and time for the deposition before the close of discovery.  (Pl.'s Reply Br. Supp. Mot. Class. Cert. ("Pl.'s Br. Reply") 7-9.)  In support of this argument, Plaintiff submitted emails between the parties showing repeated mutual attempts to schedule and reschedule Plaintiff's deposition.  (*See* Dkt. No. 42-2.)  In light of these communications, the parties' failure to conduct Plaintiff's deposition before the close of discovery does not show that Plaintiff will inadequately represent the class.

In response to Defendant's second contention, that Plaintiff will not serve as an adequate representative because her claim is subject to an arbitration agreement, Plaintiff points out that "[Defendant] has not produced *any* arbitration agreement, either as part of discovery or even as an exhibit to its Opposition . . . ."  (Pl.'s Br. Opp. 10.)  Although Defendant did excerpt some language from the purported agreement in its Opposition, Defendant provided this Court with no evidence of the existence or scope of any such agreement.  On this record, the purported conflict between Plaintiff and the class is speculative.

In light of the parties' submissions, including Plaintiff's Declaration, (*See* Patel Decl. Ex. Ex. E), this Court finds that Plaintiff does not have interests antagonistic to or in conflict with the class and that she will fairly and adequately protect the class's interests.  Accordingly, Plaintiff has satisfied the adequacy requirement as the named representative of the class.

### b. *Plaintiff's Counsel* (**Rule 23(g)**)

In addition to challenging Plaintiff's adequacy as the class representative, Defendant claims that Plaintiff cannot meet the requirements of Rule 23(a)(4) because Plaintiff's proposed class counsel will not adequately represent the class. (Def.'s Br. Opp. 23-26.) However, "questions concerning the adequacy of class counsel . . . have, since 2003, been governed by Rule 23(g)." *In re Cmty. Bank of N. Virginia*, 622 F.3d at 292 (quoting *Sheinberg v. Sorensen,* 606 F.3d 130, 132 (3d Cir. 2010)). In determining the adequacy of proposed class counsel under Rule 23(g) a court "must consider":

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(A). In addition, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(B).

In this instance, The Wolf Law Firm and the Law Office of Lawrence C. Hersh together seek appointment as class counsel. (*See* Pl.'s Br. Supp. 17-19.) Andrew R. Wolf and Bharati Sharma Patel, from The Wolf Law Firm, along with Lawrence C. Hersh, have acted as lead counsel in this matter. (*See generally* Dkt.) All three attorneys have entered appearances in this matter and Ms. Patel and Mr. Hersh took active roles in discovery and in seeking class certification. (*Id*.)

Plaintiff has submitted numerous documents including resumes, declarations, and case lists showing that The Wolf Law Firm and Mr. Hersh have extensive experience in handling class actions and other complex litigation, including FDCPA claims. (*See* Patel Decl. Ex. F, Ex. G; Dkt. No. 37-10.) In addition, proposed class counsel's submissions in this matter show their familiarity with the applicable law and support the fact that they will commit adequate resources to this

litigation. Accordingly, this Court finds that The Wolf Law Firm and the Law Office of Lawrence C. Hersh would, together, adequately represent the proposed class.

**E.     Commonality Under Rule 23(a)(1) and Predominance under Rule 23(b)(3)**

Under Rule 23(a)(1), the commonality requirement, the party seeking class certification must show that "there are questions of law or fact common to the class." However, in actions seeking certification of a Rule 23(b)(3) class, "the commonality requirement 'is subsumed by the predominance requirement.'" *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3d Cir. 1996), *aff'd sub nom. Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). Accordingly this Court addresses the commonality requirement together with the predominance requirement. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) ("we consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to 'analyze the two factors together, with particular focus on the predominance requirement.'" (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)) (internal quotation marks omitted)).

Under Rule 23(b)(3), a class action cannot be maintained unless, *inter alia*, the court finds that the "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Under this predominance requirement:

> a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3). A plaintiff must 'demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.' 'Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'

*Marcus*, 687 F.3d at 600 (citations omitted).

A review of Plaintiff's submissions appears to show that Plaintiff alleges five violations of the FDCPA. According to Plaintiff, Defendant's inclusion of a due date in the Statements sent to the class violated 15 U.S.C. §§ 1692e(2)(A) and (e)(10) (the "due date claims"). (Pl.'s Br. Supp. 6.) Plaintiff also alleges that Defendant's inclusion of post-charge-off accrued interest in the Statements violated 15 U.S.C. §§ 1692e(2)(A), e(2)(B), and f(1) (the "accrued interest claims").

*a. Commonality*

Plaintiff's due date claims, in essence, are that Defendant added due dates to Statements sent to class members without any basis for asserting that payments were actually due on those dates. (Pl.'s Br. Supp. 6.) According to Plaintiff, this behavior violated 15 U.S.C. § 1692e(2)(A), which prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt" "in connection with the collection" of a debt. In addition, Plaintiff claims that adding the due dates to the Statements violated 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Regarding the commonality requirement, Plaintiff suggests that one common question is "whether Defendant violated [certain provisions of the FDCPA]." (Pl.'s Br. Supp. 14.) However, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' . . . . not . . . merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). That said, there are several relevant questions of fact or law which are common to the class, including (1) whether Defendant is a debt collector, (2) whether Defendant included due dates in Statements sent on behalf of Midland Funding, without any basis for asserting that payments were due and, if so, whether including the due dates (3) was a false

representation of the "character" or "legal status" of the debts Defendant sought to collect or (4) was a "false representation or deceptive mean[] to collect or attempt to collect" the underlying debts. Accordingly, this Court finds Plaintiff has satisfied the commonality requirement as to the due date claims.

Plaintiff's accrued interest claims appear to be that the post-charge-off accrued interest charges in the Statements Defendant sent on behalf of Midland Funding, violated the FDCPA because Midland Funding was not licensed to make such charges and the charges were neither authorized by each of the purported class member's original credit agreements nor by New Jersey law. (Pl.'s Br. Supp. 6-7.) According to Plaintiff, this behavior violated 15 U.S.C. § 1692e(2)(A). Plaintiff also contends that inclusion of the interest charges in the Statements violated 15 U.S.C. § 1692e(2)(B), which prohibits a debt collector from falsely representing "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." In addition, Plaintiff claims that this behavior violated 15 USC § 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

As is the case regarding the due date claims, there are several relevant questions of fact or law which are common to the class regarding the accrued interest claims, including (1) whether Defendant is a debt collector, (2) whether Defendant included post-charge-off accrued interest charges in Statements sent on behalf of Midland Funding and, if so, whether including post-charge-off accrued interest charges in the Statements (3) was a false representation of the "character, amount, or legal status" of the debts Defendant sought to collect or (4) was a false representation of "any services rendered or compensation which may be lawfully received" by Defendant in the

collection of the underlying debt. Accordingly, this Court finds Plaintiff has satisfied the commonality requirement as to the accrued interest claims.

### b. *Predominance*

"The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,' . . . and assesses whether a class action 'would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated[.]'" *Sullivan*, 667 F.3d at 297 (3d Cir. 2011) (first quoting *In re Ins. Broker. Antitrust Litig.,* 579 F.3d at 266; then quoting Fed. R. Civ. P. 23(b)(3) Advisory Committee Notes). In this instance, Plaintiff's due date and accrued interest claims all fall under the FDCPA. (Pl.'s Br. Supp. 6-7.) Therefore, to prevail on these claims at trial, she would be required to prove that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 303 (3d Cir. 2014)). To the extent that any of these elements present individual, as opposed to common issues, Plaintiff must prove by a preponderance that the common issues predominate in order to satisfy the predominance requirement. *See Marcus*, 687 F.3d at 600.

In this instance, the second element of Plaintiff's claims, whether Defendant is a debt collector, is a common issue which "can be proven at trial with common, as opposed to individualized, evidence." Byrd, 784 F.3d at 164 (quoting *Hayes*, 725 F.3d at 359). The first and third elements (whether each of the putative class members is a consumer and whether sending the Statements involved attempts to collect "debts" as defined by the FDCPA, respectively), on the other hand, involve questions which may be proven through a combination of individual evidence

16

(e.g., affidavits from putative class members) and common evidence (i.e., Defendant's business records). Regarding the common evidence, for example, Defendant's records contain information showing that Plaintiff is a consumer and would, therefore, likely contain information as to the status of the other putative class members. (Patel Decl. Ex. B. at 6, 9.)

In contrast to the first three elements, determining whether common or individual issues are presented by the fourth element (that Defendant violated a provision of the FDCPA in attempting to collect the debt) requires that the due date claims and accrued interest claims be considered separately.

As discussed above, the essence of Plaintiff's due date claims are that Defendant added due dates to the Statements without any basis for asserting that payments were in fact due on the dates asserted. (Pl.'s Br. Supp. 6.) The issue of whether Plaintiff included these due dates in its Statements without any basis for asserting that payments were due on those dates is a common issue insofar as it involves Defendant's business practice and may be determined through a review of Defendant's records. Similarly, the issue of whether including baseless due dates in the Statements falsely represented "the character, amount, or legal status of any debt" or was a "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" are legal issues common to the entire class. In light of these factors, common questions of law or fact predominate over individual questions with regard to Plaintiff's due date claims.

In contrast, the essence of Plaintiff's accrued interest claims appears to be that the post-charge-off accrued interest charges in the Statements Defendant sent on behalf of Midland Funding, violated the FDCPA because Midland Funding was not licensed to make such charges and the charges were neither authorized by each of the purported class member's original credit

agreements nor by New Jersey law.  (Pl.'s Br. Supp. 6-7.)   Common questions with regard to whether Defendant violated 15 U.S.C. §§ 1692e(2)(A), (2)(B), or f(1) by including accrued interest charges in the Statements are (1) whether Defendant and/or Midland Funding had any licenses needed to charge post-charge-off interest, (2) whether including post-charge-off accrued interest charges in the Statements was a false representation of the "character, amount, or legal status" of the debts Defendant sought to collect, and (3) whether including post-charge-off accrued interest charges in the Statements was a false representation of "any services rendered or compensation which may be lawfully received" by Defendant in the collection of the underlying debt.  However, there are also a significant number of individual questions regarding whether including accrued interest charges in the Statements violated a provision of the FDCPA.  First, there is an individual question as to whether each putative class member's debt was charged off before the interest allegedly owed to Midland Funding began to accrue.  Second, Plaintiff's accrued interest claims also appear to be predicated on the claim that the original debt agreements the putative class members had with each of their original creditors did not allow interest to be accrued at the rate stated in the individual Statements.  (*See* Pl.'s Br. Supp. 5-7.)  This second issue would appear to require a review of each putative class member's original credit agreement and it is unclear whether those agreements are even included in Defendant's records.  Third, there are individual questions as to what rate of interest each putative class member was charged which is relevant insofar as it affects whether those rates are consistent with New Jersey law.

In light of these individual questions and the current record in this case, Plaintiff has not met its burden of establishing that common questions predominate over individual questions with regard to the accrued interest claims.  As a result, this Court will redefine the proposed class definition to eliminate the accrued interest claims pursuant to Rule 23(c)(1).  *See Eisen v. Carlisle*

*& Jacquelin,* 417 U.S. 156, 185 (1974) ("[A]s Rule 23(c)(1) clearly indicates, the courts retain both the power and the duty to realign classes during the conduct of an action when appropriate.") (citations omitted). Accordingly, the revised proposed class definition is:

> All New Jersey residents to whom Defendant sent a "Statement" at any time between September 12, 2013 and January 6, 2015 that contained:
>
> (a) A "Due Date" by which the consumer was to make payment towards the account.

### F. Superiority

Under the superiority requirement, the party seeking class certification must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(B)(3). Rule 23(B)(3) provides that "[t]he matters pertinent to these findings include":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

This requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)) (internal quotation marks omitted).

With regard to the due date claims, a class action is the superior method of adjudication. The potential damages that a plaintiff could receive in individually pursuing an FDCPA claim against Defendant is limited to the sum of actual damages and "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C.A. § 1692k(a)(2)(A). This limited financial incentive would seemingly curb the interest putative class members would have in individually

litigating a claim against Defendant for inclusion of a due date in a Statement. *See Amchem Products, Inc.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)) (internal quotation marks omitted)). Moreover, the parties have not indicated that the individual class members have filed related claims before other courts and it would, therefore, benefit the putative class members to have their claims consolidated in this matter.

Although the potential class size in this matter is large, the due date claims are not particularly complex nor, as discussed above, are there many individual issues relevant to the due date claims. Accordingly, Plaintiff has met her burden under the superiority requirement.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Class Certification is **GRANTED**. An appropriate Order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:        Clerk
cc:          Leda D. Wettre, U.S.M.J.
               Parties