NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUZVIMID NEPOMUCENO on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC. & JOHN DOES 1 to 10,<br><br>                Defendants. | Civil Action No. 14-05719-SDW-SCM<br><br><br><br>**OPINION**<br><br><br><br>May 24, 2017 |

**WIGENTON,** District Judge.

Before this Court are Defendant Midland Credit Management, Inc.'s ("Defendant") Motion for Summary Judgment and Plaintiff Luzvimid Nepomuceno's ("Plaintiff") Cross-Motion for Summary Judgement, both pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This Opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Plaintiff's Cross-Motion is **DENIED**.

**I.      BACKGROUND**

This matter pertains to a September 14, 2013 debt collection letter (the "collection letter") Defendant Midland Credit Management, Inc. sent Plaintiff Luzvimid Nepomuceno in an attempt

1

to collect a credit card debt ("the debt") Plaintiff owed to non-party Midland Funding, LLC ("Midland Funding"). (*See* Dkt. No. 73, Ex. A; Dkt. No. 37-5 (the "Collection Letter"); *see generally* Def.'s Statement of Material Facts ("Def.'s SMF"); Pl.'s Statement of Material Facts ("Pl.'s SMF").) Plaintiff alleges Defendant violated several provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq* ("Section 1692"), by sending the collection letter. (*See generally* Am. Compl.) Plaintiff originally owed the debt to Citibank, N.A. ("Citibank") "regarding a Home Depot branded account." (Def.'s SMF ¶ 5.) Citibank charged off[1] the debt on approximately April 12, 2012. (Pl.'s SMF ¶ 2.) Defendant concedes that Midland Funding subsequently purchased the debt in September of 2013. (Dkt. No. 69-1 ¶ 3.)[2]

The collection letter consists of three pages. (*See* the Collection Letter at 1-3.) The first page of the collection letter (the "Statement"), contains the following information:

---

[1] Charging off a debt is defined as "treat[ing] (an account receivable) as a loss or expense because payment is unlikely . . . ." CHARGE OFF, Black's Law Dictionary (10th ed. 2014).
[2] The parties are in agreement that Plaintiff is a "consumer," Defendant is a "debt collector," and the debt is a "debt," as those terms are defined under 15 U.S.C. § 1692a. (Def.'s SMF ¶¶ 1-3.)

| STATEMENT | | | |
|---|---|---|---|
| MCM Account #: REDACTED55 | | | Previous Balance: $7,688.53 |
| Original Account #: (REDACTED 17 | | | Interest Rate: 6% |
| Statement Date: 09-14-2013 | | Due Date: 10-29-2013 | Accrued Interest: $231.27 |
| Current Owner: Midland Funding LLC | | Original Creditor: Citibank, N.A. | Current Balance: $7,919.80 |
| Due Date | Date Received | Transactions | Amount |
| 10-29-2013 | 09-14-2013 | The above-referenced account was purchased by Midland Funding LLC and is serviced by Midland Credit Management, Inc. ("MCM"). The balance of $7,919.80 is due now.<br><br>Please direct all correspondence to:<br>Midland Credit Management, Inc.<br>8875 Aero Drive, Suite 200<br>San Diego, CA 92123 | $7,919.80 |
| | | | Current Balance: $7,919.80 |

(*See id.* at 1.) The second page of the collection letter, labeled as a "NOTICE OF NEW OWNERSHIP *AND* PRE-LEGAL REVIEW," states in part:

Dear Luzvimid,

On 09-04-2013, your Citibank, N.A. / The Home Depot account was sold to Midland Funding LLC, and Midland Credit Management, Inc. (MCM), a debt collection company, will be collecting on, and servicing your account.

Midland Credit Management, Inc. is considering forwarding this account to an attorney in your state for possible litigation. However, such forwarding will not occur until after the expiration of the time period described on the back of the letter. Upon receipt of this notice, please call to discuss your options.

If we don't hear from you or receive payment by 10-29-2013, we may proceed with forwarding this account to an attorney.

What do you need to do to stop this process from continuing?

1) Mail in $750.00 and call to set up your remaining payments.
2) Call us today to see how to qualify for discounts and payment plans.

LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. We encourage you to call us today: (800) 265-8825.

Sincerely,

Recovery Department
Midland Credit Management, Inc.
(800) 265-8825

This account may still be reported on your credit report as unpaid.

**BENEFITS OF PAYING**

- This may be your last chance to work with us before the account goes to an attorney.
- No additional interest will be charged to your account.
- Get rid of this debt and get on with your life.
- *Once your account is paid,*
- All collection calls and letters on this account will stop!
- After receiving your final payment, we will consider the account PAID IN FULL and the three major credit reporting agencies will be updated accordingly.

CALL US TODAY!
(800) 265-8825

(*See id.* at 2.) The second page also provides a "Payment Certificate" notifying Plaintiff of Defendant's business hours as well as methods by which Plaintiff may contact and/or make a payment to Defendant. (*Id.*) In addition, the second page lists "Current Balance: $7919.80" immediately adjacent to either "Due Date: 10-29-2013" or "Payment Due Date 10-29-2013" in two locations. (*Id.*) Finally, the third page of the collection letter contains "Disclosure Information." (*Id.* at 3.) Although the text on the third page is not fully legible, a portion of the text states that the "offer in this letter to settle your account remains open until 10-29-2013." (*Id.*)

Plaintiff alleges that the contents of the collection letter violate the FDCPA under what may be summarized as three theories of liability. First, Plaintiff claims "Defendant falsely represented that there was a 'Due Date' [sic] for the amount allegedly owed." (Pl.'s Br. Supp. Cross-Mot. Summ. J. ("Pl.'s Br. Supp.") at 2 n.2; *see* Am. Compl. ¶ 14.) According to Plaintiff, the October 29, 2013 due date "appears . . . [to be] a made up date intended to scare the Plaintiff into payment and the possible consequences of not paying by that made up date." (Pl.'s Br. Opp. Mot. Summ. J. ("Pl.'s Br. Opp.") at 8-9.) Accordingly, Plaintiff contends that Defendant's inclusion of a due date on the collection letters violated 15 U.S.C. § 1692e(2)(A) by falsely representing "the character, amount, or legal status" of Plaintiff's debt. (*See* Pl.'s Br. Supp. at 7.) Plaintiff also claims that Defendant's inclusion of the due date violated 15 U.S.C. § 1692e(10) by using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." (*Id.*)[3] For purposes of this Opinion, this Court refers to these claims as the "due date claims."[4]

---

[3] It bears noting that although Plaintiff contends that including a due date in the collection letter without any basis for asserting that payment was due on that date violated 15 U.S.C. §§ 1692e(2)(A) and e(10), she does not argue that the letter was deceptive, misleading, or unclear as to what *amount* Defendant requested that Plaintiff pay by the due date.

[4] Plaintiff's brief in support of her Cross-Motion for Summary Judgment contains one reference to 15 U.S.C. § 1692f in the context of her due date claims. (*See* Pl.'s Br. Supp. at 8.) However, the Amended

4

Second, Plaintiff alleges Defendant also violated the FDCPA by including an unauthorized interest charge at a 6% interest rate in the collection letter (the "accrued interest claims").[5] (Am. Compl. ¶¶ 16, 20-22, 60-61.) As stated in the collection letter, Defendant sought payment from Plaintiff for a total balance of $7919.80, including accrued interest of $231.27. (Collection Letter at 1.) The Statement also reflects an interest rate of 6%. (*Id.*) Moreover, Defendant admits that the interest charge began accruing on April 12, 2012, after Citibank charged off Plaintiff's debt. (Dkt. No. 37-4 at 10.)

According to Plaintiff, charging interest at the rate of 6% "was not authorized under the original credit card agreement [between Plaintiff and Citibank]." (Am. Compl. ¶ 22.) In addition, Plaintiff claims the 6% interest rate was in excess of the rate authorized by New Jersey law. (*Id.* ¶ 23.) As a result, Plaintiff argues, Defendant's attempt to charge the "Accrued Interest" in the Statement violated 15 U.S.C. §§ 1692e(2)(A), e(2)(B), and f(1).[6] (Pl.'s Br. Opp. at 9-16.)

Third, Plaintiff claims that Midland Funding did not have the appropriate license to act as a consumer lender until January 6, 2015, and that, as a result, Defendant "was not entitled to demand or collect interest accrued after an account was charged off by the original creditor for any consumer loan" on Midland Funding's behalf (the "license claim"). (*Id.* ¶ 27.) As a result, Plaintiff

---

Complaint does not include a claim under Section 1692f as part of Plaintiff's due date claims and Plaintiff will not be permitted to add such a claim via her brief.

[5] Although it is unclear in the Amended Complaint, Plaintiff's brief in opposition to Defendant's Motion for Summary Judgment limits the accrued interest claims to a challenge to the *rate* at which Defendant charged interest, as opposed to a broad challenge to Defendant charging any interest. (*See* Pl.'s Br. Opp. at 9-13.)

[6] Although Plaintiff's brief in opposition does not explicitly state that the accrued interest claims includes a claim under 15 U.S.C. § 1692f(1), this Court construes the accrued interest claims as including a claim under that provision of the FDCPA for purposes of this Opinion.

claims, Defendant violated 15 U.S.C. § 1692e(10), by falsely representing that Midland Funding was entitled to collect interest on the debt.[7] (Pl.'s Br. Opp. at 13.)

Having conducted discovery, and after reviewing Defendant's files as to Plaintiff, Plaintiff sought class certification pursuant to Rule 23 on March 18, 2016. (Dkt. No. 37.) This Court subsequently granted Plaintiff's Motion for Class Certification but limited the class to only the due date claims. (Dkt. Nos. 45-46.) Defendant subsequently filed a Motion for Summary Judgement on December 2, 2016. (Dkt. No. 67.) Plaintiff filed a Cross-Motion for Summary Judgment the same day. (Dkt. No. 68.) The parties subsequently filed briefs in opposition on December 23, 2016. (Dkt. Nos. 69-70.) Neither party filed a brief in reply.

Defendant's Motion seeks summary judgment as to all of Plaintiff's claims and, in the alternative, requests that this Court compel arbitration of Plaintiff's claims. (*See generally* Def.'s Br. Supp.) In turn, Plaintiff's Cross-Motion seeks summary judgment only as to Plaintiff's due date claims. (*See generally* Pl.'s Br. Supp.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a

---

[7] Plaintiff's brief in support of her Cross-Motion for Summary Judgment explicitly limits her license claim to a violation of 15 U.S.C. § 1692e(10). This Court construes the license claim accordingly.

material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-moving party to set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions, or denials of its pleadings. *Shields v. Zucc arini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The non-moving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the non-moving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004) (citing *Celotex Corp.*, 477 U.S. at 322-23.) If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . .

[it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The non-moving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. Appx. 548, 554 (3d Cir. 2002).

## III. DISCUSSION

### A. Arbitration

In moving for summary judgment, Defendant argues that Plaintiff's claims are subject to a valid arbitration provision present in the original credit card agreement between Plaintiff and Citibank. (Def.'s Br. Supp. at 16-32.) In response, Plaintiff contends that even if her claims were subject to a valid arbitration agreement, Defendant has waived its right to compel arbitration of the claims in this matter both by litigating the merits of this matter and by first seeking to compel arbitration nearly two years after Plaintiff filed her initial Complaint in this matter. (Pl.'s Br. Opp. at 16-20.) Therefore, this Court must determine whether Defendant waived any right to compel arbitration through its litigation conduct. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007) ("[W]aiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide.") (citations omitted).

"'Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred,' and 'will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) (internal quotation

marks omitted) (quoting *Nino v. Jewelry Exch., Inc.,* 609 F.3d 191, 208 (3d Cir. 2010)). In light of this standard, a court must consider the extent to which "a 'party has acted inconsistently with the right to arbitrate, and [must determine whether] . . . a sufficient showing of prejudice has been made by the party seeking to avoid arbitration." *In re PBM*, 700 F.3d at 117 (quoting *Nino*, 609 F.3d at 208). Prejudice in this context "need not necessarily be 'substantive prejudice to the legal position of the party claiming waiver,' but also extends to 'prejudice resulting from the unnecessary delay and expense incurred by the plaintiffs as a result of the defendants' belated invocation of their right to arbitrate.'" *In re PBM*, 700 F.3d at 121 (quoting *Nino,* 609 F.3d at 209). In order to determine whether a defendant's delay in seeking arbitration has created sufficient prejudice to a plaintiff such that a finding of waiver is appropriate, courts within the Third Circuit consider the *Hoxworth* factors, a list of "six nonexclusive factors to guide the prejudice inquiry":

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926-27 (3d Cir. 1992)). Importantly, although the *Hoxworth* factors "generally are indicative of whether a party opposing arbitration would suffer prejudice attributable to the other party's delay in seeking arbitration," the waiver determination is ultimately "case specific and thus depends on the circumstances and context of each case." *Gray Holdco, Inc.*, 654 F.3d at 451 (citing *Nino,* 609 F.3d at 209).

In considering the first *Hoxworth* factor, the timeliness of Defendant's motion seeking arbitration, this Court notes that Defendant first sought leave to file a motion to compel arbitration

on August 1, 2016. (*See* Dkt. No. 51.) Defendant made this request nearly two years after Plaintiff filed the initial Complaint in this matter on September 12, 2014. (*See* Dkt. Not. 1.) This delay is significantly longer than the delays in cases in which the Third Circuit found a party waived any right to arbitration. *See, e.g.*, *In re PBM*, 700 F.3d at 118 (holding that a ten-month delay weighed in favor of waiver); *see also Nino,* 609 F.3d at 210 ("[T]he fifteen-month delay in this case . . . dwarfs the delay involved in cases where we have found no waiver."). Moreover, Defendant has not offered any explanation for its delay in seeking arbitration. *See Gray Holdco, Inc.*, 654 F.3d at 455 (finding "[i]t significant that . . . [the defendant] offered no explanation to the District Court for its delay" in seeking arbitration). In fact, Defendant has not offered any response to Plaintiff's argument that Defendant waived any right to arbitration. The first *Hoxworth* factor, therefore, weighs heavily in favor of waiver in this instance.

In contrast to the first *Hoxworth* factor, the second factor, "the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims," *Hoxworth,* 980 F.2d at 926, weighs slightly against waiver in this instance. Although Defendant did file a brief in opposition to Plaintiff's motion for class certification, (Dkt. No. 41), Defendant has not previously filed a dispositive motion in this matter. Similarly, the third *Hoxworth* factor, "whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings," *Gray Holdco, Inc.*, 654 F.3d at 451 (citing *Hoxworth*, 980 F.2d at 926), also weighs slightly against waiver in this instance.

Defendant raised the possibility of arbitration as one of its seventeen affirmative defenses in its Answers to both Plaintiff's initial Complaint, (Dkt. No. 8 at 17), and Amended Complaint, (Dkt. No. 22 at 16). Defendant, however, did not raise the issue of arbitration again until over seven months later when it filed its opposition to Plaintiff's motion for class certification on April

18, 2016. (Dkt. No. 41 at 19-22.) Finally, after this Court issued an Opinion regarding Plaintiff's motion for class certification, Defendant waited another seven weeks before seeking leave to file a motion to compel arbitration. (Dkt. No. 51.) Accordingly, although this factor does weigh against waiver in this instance, the significance of Defendant's references to the prospect of arbitration is greatly diminished by the long period of time Defendant participated in this litigation after each reference. *See Nino,* 609 F.3d at 212 (finding that "the affirmative defense contained in [the defendant's] answer to the complaint 'informed [[the plaintiff]] of the intention to seek arbitration,' but the significance of this notice diminished the longer [the defendant] delayed in moving to compel arbitration." (citation omitted)).

The fourth *Hoxworth* factor, the extent to which Defendant engaged in non-merits motion practice, also weighs against waiver because non-merits motion practice has been limited in this matter. That said, "this factor is not an absolute requirement, and [the Third Circuit has] found waiver even where no significant non-merits motion practice occurred." *In re PBM*, 700 F.3d at 119.

In contrast, the fifth *Hoxworth* factor weighs in favor of waiver. The fifth factor, Defendant's acquiescence to pretrial orders, weighs in favor of waiver because Defendant has complied with numerous pretrial orders throughout the duration of this case, including orders scheduling pretrial conferences and managing discovery between the parties. (*See* Dkt. Nos. 9-10, 12, 16, 18, 24, 27- 29, 35.) Moreover, it does not appear that Defendant objected to any of these orders before filing its Motion for Summary Judgment.

Finally, the sixth *Hoxworth* factor is the extent to which the parties have engaged in discovery. *Hoxworth,* 980 F.2d at 926. The parties have participated in significant discovery activity throughout the course of this case. The parties submitted interrogatories and responses to

one another, produced documents, and participated in a deposition. The parties also made several submissions to this Court regarding discovery disputes. (*See* Dkt. Nos. 24, 34.) Therefore, this factor also weighs in favor of waiver.

Overall, three of the six *Hoxworth* factors weigh against waiver. However, this Court finds that the extended duration of Defendant's delay in seeking arbitration, along with Defendant's failure to explain the delay (much less respond to Plaintiff's waiver argument), weigh heavily in favor of waiver. This unnecessary delay along with the expense of litigating this matter over the course of this prolonged time period have caused sufficient prejudice to Plaintiff such that Defendant has waived any right it may have had to compel arbitration of Plaintiff's claims. Accordingly, Defendants request to compel arbitration is denied.

### B. FDCPA Claims

In order to succeed on a claim under the FDCPA, a plaintiff must establish that "(1) [the plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass*, 765 F.3d at 303 (citing *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005)). The parties in this matter agree that the first three elements are satisfied. (Def.'s SMF ¶¶ 1-3). Therefore, the issue before this Court is whether Defendant's collection letter violated the FDCPA.

Under Section 1692e of the FDCPA, a debt collector is prohibited from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e also provides a non-exhaustive list of actions which violate its provisions, including falsely representing "the character, amount, or legal status of any debt," § 1692e(2)(A), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ,"

§ 1692e(10). As discussed above, Plaintiff contends that Defendant violated these provisions by including a due date in the collection letter. (*See* Pl.'s Br. Supp. at 7-10.) Plaintiff also claims Defendant violated Section 1692e(10) by attempting to collect interest on the debt when Midland Funding lacked a consumer lender license. (*See id.* at 13-16.) Finally, Plaintiff alleges Defendant violated Section 1692e(2)(A), as well as Sections 1692e(2)(B) and 1692f(1), by attempting to collect interest on the debt at a rate of 6%. (*See id.* at 9-13.)

15 U.S.C. § 1692e(2)(B) provides that it is a violation of the FDCPA to falsely represent "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Under Section 1692f, a debt collector is prohibited from using "unfair or unconscionable means to collect or attempt to collect any debt." Relevant in this instance, Section 1692(f)(1) provides that it is a violation of the FDCPA to collect or attempt to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Defendant seeks summary judgment as to the due date, accrued interest, and license claims. (*See* Def.'s Br. Supp. at 5-15.) Plaintiff seeks summary judgment only as to the due date claims. (Pl.'s Br. Supp. at 7-10.) For the reasons that follow, this Court grants summary judgment to Defendant as to the due date claims and denies summary judgment as to the accrued interest and license claims. Consequently, Plaintiff's Cross-Motion for Summary Judgment is denied.

    a. Due Date Claims

Plaintiff contends that Defendant violated Sections 1692e(2)(A) and 1692e(10) of the FDCPA by including a due date in the collection letter. (*See* Pl.'s Br. Supp. at 7-10.) According to Plaintiff, by including a due date in the collection letter, Defendant "would cause the least

sophisticated consumer to be confused as to the status of the debt, whether payment was actually due by the due date and, if so, what the consequences would be for non-payment." (*Id*. at 9-10.) In seeking summary judgment as to these claims, Defendant argues that its inclusion of a due date in the collection letter would not mislead or deceive the least sophisticated consumer and that it, therefore, did not violate the FDCPA. (*See* Def.'s Br. Supp. at 5-10.) This Court agrees.

In order to determine whether Defendant's collection letter violates the FDCPA, this Court must consider whether inclusion of the due date "would *deceive* or *mislead* the least sophisticated debtor." *Simon v. FIA Card Servs. NA*, 639 F. App'x 885, 888 (3d Cir. 2016) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015) (internal quotation marks omitted)). "This judge-made standard is objective, 'meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be.'" *Simon*, 639 F. App'x at 888 (quoting *Jensen*, 791 F.3d at 419). That said, although the least sophisticated debtor standard is lower than a "reasonable debtor" standard, "[t]he debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. For example, even the 'least sophisticated debtor' is expected to read any notice in its entirety." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013) (first citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000), *as amended* (Sept. 7, 2000); then citing *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011)). Finally, the issue of "[w]hether language in a collection letter violates the FDCPA is a question of law." *Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n. 2 (3d Cir. 2000)).

According to Plaintiff, the due date in the collection letter is a "false, deceptive or misleading representation" because although the collection letter represents that payment is due on October 29, 2013, "there was no real 'Due Date' [sic]." (Pl.'s Br. Opp. 8-9).[8] It appears that Plaintiff essentially takes issue with two aspects of Defendant's inclusion of a due date. (*See* Pl.'s Br. Supp. at 9-10.) First, that the meaning of "due" is unclear or confusing. (*Id.*) Second, that Defendant did not outline what the consequences of Plaintiff's inaction would be. (*Id.*) However, neither of these issues identify a basis on which Defendant's inclusion of a due date in the collection letter violated Section 1692e.

Plaintiff first seems to contend that the least sophisticated debtor would be misled or deceived by the inclusion of the phrase "due date" in the collection letter because it is unclear or confusing what "due" means in the context of the letter. (*See* Pl.'s Br. Supp. at 9-10.) However, as discussed above, the least sophisticated consumer "is expected to read any notice in its entirety." *Caprio*, 709 F.3d at 149 (citing *Lesher*, 650 F.3d at 997). Review of the letter, in its entirety, shows that Defendant sought payment of the balance of the debt by October 29, 2013. (*See* Collection Letter at 1-2.) The letter also provided an alternative to paying the balance by that date: "Mail in $750.00 and call to set up your remaining payments." (*Id.* at 2.) In addition, the letter provided that Defendant was "considering forwarding this account to an attorney . . . for possible litigation[]" and that if Plaintiff did not contact Defendant or send "payment by 10-29-2013, we may proceed with forwarding this account to an attorney." (*Id.*) Finally, the letter provides a list

---

[8] Although Plaintiff does use the word "deceive" at times in her submissions, she does not actually appear to claim that the phrase "due date" in the letter is deceptive, i.e., that "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Szczurek*, 627 F. App'x at 60 (3d Cir. 2015).

15

of "benefits of paying," including that "No additional Interest [sic] will be charged to your account." (*Id.*) In other words, when read in context, "due date" as used in the collection letter, means that Defendant sought payment (or at least communication) by that date and that, if Plaintiff did not contact or pay Plaintiff by that date, Defendant would potentially pursue litigation and would potentially seek additional interest. (*Id.*) Plaintiff does not offer an alternative interpretation of the phrase "due date" and to the extent she implies in her briefing that the least sophisticated debtor would understand "due date" to mean something else (for example, that there would be some other consequences or penalties associated with non-payment) these are idiosyncratic interpretations which are excluded from consideration under the least sophisticated consumer standard." *Caprio*, 709 F.3d at 149 (citing *Wilson*, 225 F.3d at 354). Furthermore, the collection letter clearly identifies the consequences of inaction by the October 29 due date: potential litigation and the possibility that Defendant would attempt to charge additional interest. (*See* Collection Letter at 2.) Accordingly, inclusion of a due date in the collection letter would not deceive or mislead the least sophisticated debtor. Defendant is therefore entitled to summary judgment as to the due date claims and Plaintiff's Cross-Motion for Summary Judgment is denied.

b. Accrued Interest Claims

Plaintiff claims Defendant was neither authorized by law, nor contract, to collect interest on the debt at a rate of 6%. (*See* Pl.'s Br. Opp. at 9-13.) As a result, Plaintiff argues, Defendant's attempt to collect accrued interest at a rate of 6% in the collection letter violated FDCPA Sections 1692e(2)(A), e(2)(B), and f(1). In seeking summary judgment as to the accrued interest claims, Defendant argues that it was not prohibited by law from collecting accrued interest at a rate of 6% and, also, that charging interest at that rate was authorized by Plaintiff's credit agreement with

16

Citibank. (*See* Def.'s Br. Supp. at 11-13.) Therefore, this Court must first determine whether Defendant was affirmatively prohibited by law from collecting interest on the debt.

In arguing that Defendant was not authorized to collect interest on the debt at a rate of 6%, Plaintiff claims that New Jersey Court Rule 4:42-11(b) limited the interest Defendant could have collected on the debt to .25%. (Pl.'s Br. Opp. at 11-12.) However, N.J. Ct. R. 4:42-11 pertains to the rate at which a *court* may, within its discretion, asses prejudgment interest. *See McCabe v. Eichenbaum & Stylianou, LLC*, No. CIV.A. 11-7403 MAS, 2012 WL 6624229, at *3 (D.N.J. Dec. 19, 2012) ("However, the assessment of prejudgment interest is a matter of discretion for the trial court, not the parties involved.") (citing *Pignataro v. Port Auth. of N.Y. & New Jersey*, 593 F.3d 265, 274 (3d Cir. 2010)). N.J. Ct. R. 4:42-11 does not address whether a debt collector may, pursuant to a contract, collect interest on a debt. Moreover, Plaintiff has not identified, nor has this Court found, any New Jersey law which expressly prohibits assessment of interest under these circumstances. Therefore, this Court must next determine whether Defendant has shown Plaintiff entered an agreement by which Defendant would be entitled to collect accrued interest on the debt at a rate of 6%. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 407–08 (3d Cir. 2000) (explaining that if state law "neither affirmatively permits nor expressly prohibits" a debt collector from assessing interest on a debt, the debt collector may only charge interest if the consumer "expressly agrees to it in the contract [creating the debt]." (quoting *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999))).

According to Defendant, it is authorized to collect 6% interest on the debt pursuant to the original credit card agreement between Plaintiff and Citibank. (*See* Def.'s Br. Supp. at 11.) In support of this argument, Defendant submitted a document which Defendant contends is "the applicable Citibank, N.A. Card Agreement." (*See* Def.'s SMF ¶ 9; Dkt. No. 67-4.) However, the

document, which was not authenticated, provides no basis for this Court to determine that it is actually the agreement Plaintiff entered with Citibank. Moreover, even if this was the governing agreement, Defendant has not cited any provision in the agreement which authorizes Defendant to charge a 6% interest rate on the debt. Accordingly, Defendant is not entitled to summary judgment as to the accrued interest claims.

  c. License Claim

Defendant also seeks summary judgment as to Plaintiff's license claim. (*See* Def.'s Br. Supp. at 14-15.) According to Plaintiff, Midland Funding did not have the license required under the New Jersey Consumer Finance Licensing Act ("NJCFLA"), N.J.S.A § 17:11C, *et seq.*, to act as a consumer lender until January 6, 2015. (Am. Compl. ¶ 27.) As a result, Plaintiff contends, Defendant "was not entitled to demand or collect interest accrued after an account was charged off by the original creditor for any consumer loan," at the time Defendant sent Plaintiff the collection letter. (Am. Compl. ¶ 27.) Accordingly, Plaintiff claims Defendant violated 15 U.S.C. § 1692e(10) by falsely representing that Midland Funding was entitled to collect interest on the debt. (Pl.'s Br. Opp. at 13-14.)

Under the NJCFLA, a "consumer lender;" defined as "a person licensed, or a person who should be licensed, under [the NJCFLA] to engage in the consumer loan business;" is prohibited from "engag[ing] in business as a consumer lender or sales finance company without first obtaining a license . . . ." N.J.S.A. § 17:11C-3. Moreover, the NJCFLA specifies that "[a]ny person directly or indirectly engaging in the business . . . of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business." *Id*. § 17:11C-2. Based on these criteria, Plaintiff claims, and Defendant does not deny, Midland Funding is a "consumer lender"

under the NJCFLA. (Pl.'s Br. Supp. at 13.) In addition, Plaintiff claims, and Defendant does not deny, that Midland Funding did not obtain the license the NJCFLA requires before Defendant sent the collection letter on Midland Funding's behalf. (*Id.*) Rather, Defendant argues that it is entitled to summary judgment as to the license claim because there is no private right of action under a third statute, the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8, *et seq.* (*See* Def.'s Br. Supp. at 14-15.)

Although Defendant acknowledges that "Plaintiff has not advanced a claim against [Defendant] pursuant to the New Jersey Consumer Fraud Act," it nonetheless contends that the lack of a private right of action under the Consumer Fraud Act somehow deprives Plaintiff of a cause of action under the FDCPA. (*Id.*) Yet, this Court has previously held that "a debt collector's representation in a collection complaint that it had the right to collect a debt when, in fact, it lacked the license required to initially purchase the debt, would violate, at minimum, FDCPA [S]ection e(10)." *Lopez v. Law Offices of Faloni & Assocs., LLC*, No. 16-CV-01117-SDW-SCM, 2016 WL 4820629, at *5 (D.N.J. Sept. 14, 2016) (citing *Veras v. LVNV Funding, LLC*, No. CIV. 13-1745 RBK/JS, 2014 WL 1050512, at *6 (D.N.J. Mar. 17, 2014)). Certainly, the same is true of a representation in a collection letter that the owner of a debt is entitled to collect interest on a debt when, in fact, the owner of the debt lacked the license required to charge interest on the debt. Accordingly, Defendant's argument that there is no private right of action under the Consumer Fraud Act does not entitle Defendant to summary judgment as to Plaintiff's license claim.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Plaintiff's Cross-Motion for Summary Judgment is **DENIED**. An appropriate Order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig:        Clerk
cc:          Steven C. Mannion, U.S.M.J.
              Parties